IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NEWPAGE WISCONSIN SYSTEM INC. and
NPWSI RETIREE HEALTH PLAN f/k/a
THE SENA RETIREE HEALTH PLAN,                    OPINION and ORDER

                                                         10-cv-41-bbc

                      Plaintiffs,

            v.

UNITED STEEL, PAPER & FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL
AND SERVICE WORKERS INTERNATIONAL UNION,
AFL-CIO/CLC; WILLIAM CLENDENNING;
LAWRENCE BIERSTAKER; BERNARD ROUSE;
and GARY DOLLEVOET,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In 2006 and 2010, plaintiff NewPage Wisconsin System Inc. (NPWSI), the operator

of several paper mills in Wisconsin and elsewhere, made changes in benefits for certain union

retirees who retired from paper mills operated by NPWSI in Wisconsin.[1]  The modifications

---

     [1] Throughout this opinion, plaintiff NewPage Wisconsin System Inc. will be referred
to as NPWSI to distinguish it from its parent company, NewPage Corporation, the
defendant in a related lawsuit in the Southern District of Ohio.  References to NWPSI
Retiree Health Plan will be to "the plan."

led to two federal lawsuits:  a proposed class action brought by United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial Workers International Union, AFL-CIO/CLC (the union) and three retirees in the Southern District of Ohio against the parent corporation of NPWSI, challenging the modifications under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(a)(1)(B) and (a)(3), and § 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185; and, one month later, this suit for declaratory judgment brought by NPWSI and the NPSWI Retiree Health Plan under 28 U.S.C. § 2201, the LMRA and ERISA, seeking declaratory relief against defendants (the union, Clendenning, Bierstaker, Rouse, Dollevoet and a proposed defendant class).

In this suit, plaintiffs seek judgment declaring that NPWSI's amendments to the employee benefits plan did not violate ERISA or the collective bargaining agreements between the parties.  Defendants have filed a motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim on which relief may be granted, Fed. R. Civ. P. 12(b)(6).  In the alternative, defendants ask the court to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), and dismiss this case in favor of the Ohio proceeding or transfer it to the Southern District of Ohio.

In their brief in opposition to the motions to dismiss or transfer, plaintiffs argue at

length that NWPSI and not its parent corporation is solely responsible for the plan changes and that neither of the plaintiffs is subject to suit in Ohio.  It is not necessary to reach those questions because I conclude that this court lacks subject matter jurisdiction over plaintiffs' claim for declaratory relief regarding the alleged ERISA violations.   Therefore, I am dismissing that claim. Jurisdiction would be present over their motion for declaratory judgment claim regarding their alleged LMRA violations, but I am exercising my discretion under the Declaratory Judgment Act and dismissing that claim in favor of the pending class action in the Southern District of Ohio filed by the union and the retirees, the natural plaintiffs in this dispute.  Plaintiffs will have an opportunity in that court to argue their contentions that they are not subject to suit there.

In determining whether this court can exercise jurisdiction over this case and whether plaintiffs' complaint states a claim upon which relief may be granted, I have relied only on the allegations in plaintiffs' complaint.  However, in determining whether this case should be dismissed in favor of the Ohio case, I have considered the pleadings and other information submitted by the parties related to the Ohio proceeding.


FACTS

A.  Allegations of Fact in Plaintiffs' Complaint

1.  The parties

3

Plaintiff NewPage Wisconsin System Inc. (NPWSI) is a Wisconsin corporation with offices in Wisconsin Rapids, Wisconsin that operates paper mills in several states and Nova Scotia, Canada.  NPWSI was formerly known as Stora Enso North America Corp., Stora Enso Consolidated Papers, Inc. and Stora Enso Acquisition, Inc.  At times relevant to this case, NPWSI operated mills in Wisconsin Rapids, Biron, Stevens Point, Niagara and Kimberly, Wisconsin.  NPWSI also administers an employee benefit plan, providing retiree medical benefits.  Through its predecessors, NPWSI entered into collective bargaining agreements concerning benefits for active employees who retired.

Plaintiff NPWSI Retiree Health Plan, formerly known as the SENA Retiree Health Plan, is an ERISA-regulated welfare benefit plan administered within this judicial district by NPWSI.  Defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Works International Union, AFL-CIO/CLC (the union) is a labor organization headquartered in Pittsburgh, Pennsylvania, that maintains offices throughout Wisconsin, including in Wisconsin Rapids, Wisconsin.  Between 1984 and 2010, plaintiff NPWSI and its predecessors, including Consolidated Papers, Inc., Midtec Paper Corporation and Niagara of Wisconsin Paper Corporation, entered into a series of collective bargaining agreements with the union and its predecessors, including the United Paperworkers International Union, the Paper, Allied-Industrial, Chemical & Energy Workers International Union and Paper Mill Workers Union of Kimberly, regarding employee

4

retirement plans provided by NPWSI to its employees.  The labor agreements covered certain union bargaining unit members at several mills in Wisconsin, including mills at Biron, Stevens Point, Wisconsin Rapids, Whiting, Kimberly and Niagara, Wisconsin.

Defendant William Clendenning is a resident of Wisconsin Rapids, Wisconsin, who worked for NPWSI at a mill in Wisconsin Rapids for 38 years until he retired in 2004.  He is over 65.  Clendenning was a member of the union bargaining unit at the Wisconsin Rapids facility and was also president of Local 187.

Defendants Lawrence Bierstake and Bernard Rouse are residents of Green Bay, Wisconsin who worked for NPWSI at a mill in Niagara, Wisconsin until they retired.  They are over 65 and retired as members of the union bargaining unit at the Niagara mill.

Defendant Gary Dollevoet is a resident of Appleton, Wisconsin who worked for NPWSI at the Kimberly mill until he retired.  He is over 65 and was the local union president for the Kimberly Mill from 1995 through 2000.

2.  Changes to retiree's health benefits

In 2004 and 2009, plaintiff NPWSI announced that it intended to phase out its contribution to the health care premiums for retirees and spouses age 65 and older.  Neither the union or any other defendant took action to challenge the 2004 changes.  NPWSI also amended the retiree health benefits in 2006.

3. <u>Ohio lawsuit</u>

On December 24, 2009, the union, defendant Clendenning and two other retirees initiated a lawsuit against NewPage Corporation and the NewPage Corporation Welfare Benefit Plan in the Southern District of Ohio. <u>Clendenning v. NewPage Corporation</u>, 09-cv-493-tmr. NewPage Corporation is the parent company of NewPage Consolidated Papers Inc., which is the parent company of plaintiff NPWSI. NewPage Corporation is not the same entity or a successor entity to NPWSI, Consolidated Papers, Inc., Stora Enso North American or Niagara of Wisconsin Paper Company. Plaintiffs NPWSI and the Plan were not named as defendants in the Ohio lawsuit.

In the Ohio complaint, the union and the retirees contend that union members retiring from NPWSI facilities had vested retiree health benefits under the NewPage Welfare Plan that "were created through collective bargaining between NewPage (or its predecessors) and the union (or its predecessors)" and "established NewPage's obligation to provide retiree medical benefits throughout retirement." The union and the retirees contend that Newpage Corporation violated the collective bargaining agreements, the Labor Management Relations Act, 28 U.S.C. § 185(a), and § 502(a)(1)(B) and (a)(3) of ERISA by reducing health coverage to retirees age 65 and older and their spouses.

6

4.  Present lawsuit

Plaintiffs NPWSI and the NPWSI Plan filed this lawsuit on January 29, 2010 against a defendant class of retirees (including their spouses, surviving spouses and eligible dependents) formerly employed by NPWSI or its predecessors:

> (1) who were represented by the [the union] or its predecessors while working and who retired from NPWSI or its predecessors having met the eligibility requirements in effect at their retirement for retiree health insurance allegedly specified in the collective bargaining agreements; and
>
> (2) as to whom NPWSI has reduced or announced that it will reduce or eliminate retiree health care benefits or retiree health care benefit contributions.

Plaintiffs seek a declaratory judgment that the amendments to the Plan did not violate the LMRA or ERISA. Plaintiffs have named defendants Clendenning, Bierstaker, Rouse and Dollevoet as representatives of the proposed defendant class, and suggest that the following subclasses may be appropriate.

> **(1) Joint labor agreement subclass**, consisting of retirees formerly represented by [the union] Locals 2-94, 2-116, 2-187, 2-359 and 2-1306 or their predecessors;
>
> **(2) Niagara contract subclass**, consisting of retirees formerly represented by [the union] Local 2-1166 or its predecessors;
>
> **(3) Kimberly contract subclass**, consisting of retirees formerly represented by [the union] Local 2-0009 or its predecessors.

These subclasses are identical to those proposed in the Ohio lawsuit.

B.  <u>Additional Facts Related to Proceedings in Defendants' Ohio Case</u>

In the complaint filed by the union and retirees in the Ohio action, the union and retirees allege that NewPage Corporation is a Delaware corporation with its principal offices in Miamisburg, Ohio, that operated the paper mills where the retirees worked in Wisconsin and was the administrator of the employee benefit plan that provided benefits to the retirees. The union and the retirees allege that jurisdiction and venue are proper in the Southern District of Ohio because NewPage Corporation is headquartered in Ohio, the NewPage Plan is administered in Ohio and the amendments to the NewPage Plan were made in Ohio.

On February 7, 2010, after plaintiffs NPWSI and the NPWSI Plan filed the present lawsuit in this court, the union and retirees filed a motion to amend their complaint in the Ohio lawsuit and add NPWSI and the NPWSI Plan as defendants.  NPWSI and the NPWSI Plan opposed the motion to amend, contending that the amendment would be futile because they are not subject to personal jurisdiction in Ohio.  NPWSI argued that it is a Wisconsin corporation with its principal place of business in Wisconsin Rapids, Wisconsin, the collective bargaining agreements at issue were negotiated in Wisconsin and that this dispute should be resolved in the new lawsuit it had initiated in the Western District of Wisconsin.

On February 12, 2010, NewPage Corporation and NewPage Corporation Welfare Benefit Plan, the defendants in the Ohio action, filed a motion to dismiss for lack of subject matter jurisdiction, contending that it is NPWSI that administers the employee benefits plan

8

to which the retirees were eligible to participate and only NPWSI and its predecessors were parties to collective bargaining agreements.  NewPage Corporation provided the Ohio court a chart describing the corporate structure of the relevant companies at issue in this litigation. See copy of chart, plts.' brief, dkt. #31, at 7.

On May 3, 2010, the court in Ohio found venue proper for the union and retirees' ERISA claim because the union and retirees had submitted undisputed evidence that the NPWSI Plan is administered in the Southern District of Ohio.  Clendenning v. NewPage Corporation, 09-cv-493-tmr, dkt. #22, at 6.  However, the court instructed the parties to submit additional briefing on the issues of personal jurisdiction over NPWSI and the NPWSI Plan and the propriety of venue over the plaintiffs' LMRA claim.  The court gave the parties until July 20, 2010 to conduct discovery on the issue of personal jurisdiction and until August 27, 2010 to complete briefing on the issue.  The court deferred ruling on the plaintiffs' motion for leave to file a second amended complaint and add NPWSI and the NPWSI Plan as defendants until it had ruled on the issue of personal jurisdiction.


OPINION

A. Subject Matter Jurisdiction

Plaintiffs are suing under 28 U.S.C. § 2201 for declaration of their right to amend their ERISA plan.  Section 2201 is not an independent source of jurisdiction,  Ameritech v.

9

Communications Workers of America, 220 F.3d 814, 818(7th Cir. 2000); 28 U.S.C. § 2201
(authorizing federal courts to grant declaratory judgments in cases within their jurisdiction);
plaintiffs assert jurisdiction under §§ 1331 (federal question) and 1367 (supplemental
jurisdiction.

Defendants contend that neither statute supplies a basis for jurisdiction.  In support
of their argument that Seventh Circuit precedent precludes plaintiffs' claim for declaratory
relief, defendants rely on Newell Operating Co. v. International Union of United
Automobile, Aerospace and Agricultural Implement Workers of America, 532 F.3d 583 (7th
Cir. 2008), overruled on other grounds by Envision Healthcare, Inc. v. PreferredOne
Insurance Co., 604 F.3d 983, 986 n.1 (7th Cir. 2010) (holding that court of appeals should
have applied "abuse of discretion" standard rather than "de novo" standard of review to
district court's decision to dismiss declaratory judgment action in Newell).  In Newell, the
employer had amended an ERISA welfare benefit plan to require increased premiums for
retirees.  In anticipation of complaints from the retirees and their union, Newell (and related
entities, the ERISA plan and the plan's administrative committee) filed a declaratory
judgment action in the Northern District of Illinois against the union and 474 retirees,
seeking a declaration that the plan amendments did not violate ERISA or the LMRA.  About
a month later, the union and four retirees filed a putative class action in the Western District
of Michigan, alleging that the amendment violated ERISA and breached the applicable

10

collective bargaining agreements in violation of the LMRA.  On the union's motion in the Illinois case to dismiss for lack of subject matter jurisdiction or alternatively, to transfer venue to the Michigan district, the district court held that jurisdiction existed under the LMRA but not under ERISA, because the plaintiffs were not suing to obtain equitable relief in order to enforce the terms of ERISA or an ERISA plan; rather, the plaintiffs were seeking to force retirees to make larger premium payments.  Exercising its discretion, the court declined to retain jurisdiction over the suit, finding it more appropriate for resolution in Michigan.

On appeal, the Court of Appeals for the Seventh Circuit upheld the lower court's decision, observing that although the Declaratory Judgment Act empowers a federal court to enter a declaratory judgment in "a case of actual controversy within its jurisdiction," 28 U.S.C. § 2201(a),  the Act is not "an independent grant of jurisdiction[;] rather jurisdiction must be predicated on some other statute.'"  Newell, 532 F.3d at 587 (quoting Rueth v. EPA, 13 F.3d 227, 31 (7th Cir. 1993)).  Analyzing the question of jurisdiction under ERISA, the court of appeals agreed with the district court that subject matter jurisdiction did not exist over the plaintiffs' ERISA claim.  It explained that ERISA § 502(a)(3) provides subject matter jurisdiction over equitable claims by the fiduciary of an ERISA plan for a declaration "to enforce any provisions of this subchapter or the terms of the plan," 29 U.S.C. § 1132(a)(3)(B)(ii), but this does not mean that the courts have jurisdiction over every suit

11

for equitable relief by an ERISA fiduciary.  Their jurisdiction extends only to suits by

fiduciaries seeking to "enforce" ERISA or ERISA plans.  Newell, 532 F.3d at 589.  The suit

by the Newell entities could not "logically be construed as" such a suit, id., because the

fiduciary did not need judicial authorization to collect the newly implemented premium

charges.  It could simply stop providing benefits to any retiree who did not pay the required

amount.  Moreover, the Newell entities could not be held to have violated their fiduciary

duties if they were enforcing the terms of the plan.  In affirming the district court's dismissal

of the suit, the court of appeals said that

> A plaintiff cannot bring a claim within ERISA § 502(a)(3) by advantageous
> and creative pleading . . . .  The appellants have attempted to usurp the
> jurisdictional choice of the UAW and retirees by filing an anticipatory suit for
> declaratory relief under ERISA § 502(a)(3) before they could be sued in
> Michigan; however, without a need to enforce the Plan or ERISA, appellants'
> effort is for naught.  The appellants' suit for declaratory and injunctive relief
> under ERISA § 502(a)(3) against the UAW and retirees was unnecessary, and
> the district court properly concluded that jurisdiction did not exist under the
> statute.  We therefore affirm the district court's dismissal of the counts of
> appellants' complaint that advanced claims under ERISA for lack of subject-
> matter jurisdiction.

Id. at 589.

The court held that it was proper for the district court to dismiss the Illinois case in

favor of the one in Michigan, although the court could have retained the LMRA claim

because it had jurisdiction under § 301 of the LMRA, which provides jurisdiction over

12

"[s]uits for violation of contracts between an employer and a labor organization representing employees." Id. (quoting 29 U.S.C. § 185); see also Stevens Construction Corp. v. Chicago Regional Council of Carpenters, 464 F.3d 682, 685 (7th Cir. 2006) ("[A] declaratory judgment plaintiff accused of violating a collective-bargaining agreement may ask a court to declare the agreement invalid.") (quoting Textron Lycoming Reciprocating Engine Division, Avco Corp. v. United Automobile, Aerospace, and Agricultural Implement Workers of America, 523 U.S. 653, 658 (1998)).  The union and retirees were the "natural plaintiffs" and both the ERISA and LMRA claims could proceed in the same suit in Michigan.  Newell, 532 F.3d at 590-91.  The court of appeals noted that if the district court had decided not to dismiss the LMRA action, it was likely it would have transferred the case to Michigan because the majority of the retirees lived in Michigan, the plants where the retirees worked were located in Michigan and the collective bargaining agreement was negotiated there.  Id.

In this case, defendants do not deny that the court has subject matter jurisdiction over plaintiffs' claim for declaratory relief regarding LMRA violations.  They acknowledge the rulings in Newell and related cases to that effect.  E.g., Stevens Construction, 464 F.3d at 685; J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, 398 F.3d 967, 973 (7th Cir. 2005).  Their disagreement with plaintiffs centers on the existence of jurisdiction over plaintiffs' ERISA claim.  Defendants contend that Newell requires dismissal of plaintiffs' claim under ERISA.  Plaintiffs read the case quite differently, contending that

13

it "practically dictates" retention of the case.  Plfs.' Br., dkt. #31, at 14.  In plaintiffs' view, this court has jurisdiction under 28 U.S.C. § 1331 or § 1367 because their declaratory judgment claim arises under federal law or, alternatively, because jurisdiction exists over their LMRA claim and the court has supplemental jurisdiction over their ERISA claim.

1. Jurisdiction of declaratory judgment claims under federal law

Since Newell was decided in 2008, at least two district courts in this circuit have held that although employers do not have independent standing to sue under ERISA for a declaration of their rights under ERISA or an ERISA plan to modify or terminate employee benefits, employers (or plan fiduciaries) may bring such claims under the Declaratory Judgment Act and invoke the court's federal question jurisdiction under § 1331.  Boeing Co. v. March, 656 F. Supp. 2d 837, 844-45 (N.D. Ill. 2009) (finding jurisdiction under Act because suit brought by employer mirrored employee-initiated suit over which court had jurisdiction); Trustmark Life Insurance Co. v. Hibben, 2009 WL 1684513, *3 (N.D. Ill. June 12, 2009) (finding jurisdiction under Act over plaintiff seeking declaration that it did not violate provisions of ERISA plan by reducing defendant's disability payments).  In both cases, the district courts noted that in deciding whether federal jurisdiction can be exercised over a declaratory judgment action, the usual practice is to determine whether a federal question would be present had the declaratory defendant filed suit against the declaratory

14

plaintiff and the subject matter of the complaint remained the same.  <u>Boeing</u>, 656 F. Supp. 2d at 843; <u>Trustmark</u>, 2009 WL 1684513 at *3.  In <u>Boeing</u>, the court concluded that because a union or retiree could bring a claim under ERISA, the employer could "piggyback" on that suit to establish jurisdiction over a declaratory judgment action.  <u>Id.</u> at 845.  It distinguished the case before it from <u>Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust for Southern California</u>, 463 U.S. 1 (1983), in which the Supreme Court held that federal jurisdiction did not exist over a state agency's claim for a declaration that its tax levy on a benefit fund did not violate ERISA, despite the possibility that the benefit fund could have brought a suit under ERISA in federal court to stop the state from levying against the fund to recover unpaid personal income taxes from fund members.  Analyzing the case in <u>Boeing</u>, the district court was persuaded that the jurisdictional deficiency in <u>Franchise Tax Board</u> was not whether the state agency had independent standing to sue under ERISA or the Declaratory Judgment Act, but whether the controversy was "within the carefully circumscribed ambit of federal jurisdiction."  <u>Boeing</u>, 656 F. Supp. 2d at 844.  It concluded that although a dispute about a state tax-levying regulation was not within the "ambit of federal jurisdiction," a plaintiff employer's suit seeking to determine the legality of its modifications to an ERISA plan would be.

With respect, I believe that the court in <u>Boeing</u> reached a conclusion that does not comport with <u>Newell</u>, 656 F.3d 837.  The Newell court made it clear that it found no source

15

of jurisdiction in ERISA and it held by implication that it found no source of jurisdiction in any other statute.  On appeal, the plaintiffs argued that regardless whether ERISA could be a source of jurisdiction, the court had jurisdiction under the Declaratory Judgment Act because the retirees and union could have filed a coercive action under ERISA that would have necessarily presented a federal question.  Appellants' Br., at 16, available at 2007 WL 2051746.  The court of appeals did not address this argument directly, but it affirmed the district court's dismissal of the plaintiffs' ERSIA claims *for lack of subject matter jurisdiction* and stated that jurisdiction could not be predicated on the Declaratory Judgment Act.  Newell, 532 F.3d at 587, 589.  If the court of appeals had agreed with the plaintiffs that the nature of the defendants' case supplied subject matter jurisdiction under § 1331 or that the plaintiffs had established subject matter jurisdiction under the Declaratory Judgment Act, it would not have affirmed dismissal on the ground of subject matter jurisdiction.  Further, the court of appeals would not have stated that Michigan was a more desirable forum because, unlike in Illinois, "the ERISA and LMRA claims *may go forward in the same litigation*" in Michigan.  Id. at 591 (emphasis added).

The court of appeals decided that ERISA does not permit plan fiduciaries to seek a declaration that their modification or termination of retiree benefits is lawful under ERISA, because such declaratory relief is unnecessary to further the purpose of ERISA.  Newell, 532 F.3d at 589.  In other words, Congress enacted the civil enforcement provision of ERISA so

that plan participants and beneficiaries can enforce their rights, not so that plan administrators can seek declaration of their right to reduce or deny benefits.  E.g., Gulf Life Insurance Co. v. Arnold, 809 F.2d 1520, 1523-25 (11th Cir. 1987) (affirming dismissal of declaratory judgment claim by fiduciary seeking to determine liability for benefits claimed by former employee because plain language of ERISA venue provisions precluded such declaratory action and allowing such a suit "would stand ERISA's unequivocal purpose to protect the interests of plan participants and beneficiaries] on its head."); Crown Cork & Seal Co. v. International Association of Machinists & Aerospace Workers, AFL-CIO, 2004 WL 5627647, *2-4 (D. Neb. Jan. 20, 2004) (dismissing for failure to state claim declaratory action filed by fiduciary of ERISA plan seeking declaration that it may unilaterally modify health benefits); CNH America LLC v. International Union, United Automobile, Aerospace, & Agricultural Implement Workers of America, 2004 WL 5627648, *12 (E.D. Wis. Aug. 3, 2004) (dismissing declaratory judgment claim for declaration that retirees are not entitled to lifetime health care benefits for lack of jurisdiction under ERISA or § 1331).  The court of appeals' conclusion that subject matter jurisdiction was lacking must have been based on its conclusion that the plaintiffs' suit did not involve the enforcement of any ERISA rights. In other words, because ERISA does not permit employers, administrators or fiduciaries to seek declarations that their modifications to benefit plans do not violate ERISA, the federal courts do not have jurisdiction over such claims.

2. Exercise of supplemental jurisdiction over ERISA claim

Under 28 U.S.C. § 1367(a),

[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Plaintiffs contend that their ERISA claim is "entangled" with their LMRA claim and that for this reason, this court should retain supplemental jurisdiction over their ERISA claim. Plfs.' Br., dkt. #31, at 13. The only case that plaintiffs cite in support of this argument is In re Repository Technologies, Inc., 601 F.3d 710, 724-28 (7th Cir. 2010), which involved circumstances completely different from those in the present case. In In re Repository, the court of appeals held that the district court abused its discretion by remanding state law claims that were inseparable from the federal bankruptcy case and had already consumed the time of multiple federal judges. Id. Thus, unlike the present case, In re Repository is a classic example of a situation in which a district court may extend supplemental jurisdiction: when a party asserts state law claims that are part of the same case or controversy as federal law claims over which the court has jurisdiction.

Plaintiffs' argument under § 1367 fails for the same reasons its § 1331 arguments fail. Plaintiffs' ERISA declaratory judgment claim is not a state law claim; it is not even a federal law claim. According to the court of appeals in Newell and the plain language of ERISA §

18

502(a)(3), the fiduciary of an employee benefit plan does not have a cause of action for declaratory relief when the question is whether amendments to an employee benefit plan violate ERISA.  <u>Newell</u>, 532 F.3d at 589 (quoting <u>Mertens v. Hewitt Associates</u>, 508 U.S. 248, 253  (1993) ("[Section 502(a)(3)] does not, after all, authorize 'appropriate equitable relief' *at large*, but only 'appropriate equitable relief' for the purpose of 'redressing any violations or . . . enforcing any provisions' of ERISA or an ERISA plan.") (emphasis in original)).  Because a fiduciary does not have such a cause of action, district courts do not have supplemental jurisdiction over such claims.  <u>Newell</u>, 532 F.3d at 589.

In sum, the court of appeals has concluded, under circumstances almost identical to those in this case, that declaratory-plaintiffs may not bring claims seeking a declaration that amendments to an ERISA plan comply with the requirements of ERISA.  The court of appeals warned that plaintiffs may not bring such claims through "creative pleading." Plaintiffs may not avoid the rule of the <u>Newell</u> case by asserting that their claim is "supplemental to" or "derivative of" their LMRA claim or that their claim survives because it raises issues of federal law.  Therefore, plaintiffs' claim for declaratory relief regarding ERISA violations will be dismissed.

## B.  <u>Discretion under Declaratory Judgment Act</u>

Although this court has subject matter jurisdiction over plaintiffs' LMRA claims, it

19

remains to be decided whether jurisdiction should be exercised under the Declaratory Judgment Act. Under the Act, district courts "*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). The Supreme Court has explained:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close.

Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). In other words, the Declaratory Judgment Act does not confer an absolute right upon a litigant to seek a declaratory judgment, Green v. Mansour, 474 U.S. 64, 72 (1985), and district courts have "significant discretion" in deciding whether to exercise this authority. Envision Healthcare, 604 F.3d at 986. "[T]here is no set criteria for when a court should exercise its discretion to abstain" from entertaining a suit for declaratory relief, id., but the Court of Appeals for the Seventh Circuit has provided some guidance. In particular, the court of appeals has explained that two situations are well suited to declaratory judgment actions:

> (1)The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) *but has not done so*; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.

20

Tempco Electric Heater Corp. v. Omega Engineering, Inc., 819 F.2d 746, 749 (7th Cir. 1987) (emphasis added).  Further, a declaratory judgment action that is brought in the face of clear threats of suit and seeking a determination that no liability exists should be closely scrutinized as potentially improper and unnecessary.  Id. at 750.  The court of appeals has also provided five equitable considerations that a district court may look to for guidance in deciding whether to entertain a declaratory judgment suit:

> (1) whether the judgment would settle the controversy; (2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata;' (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach on state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective.

NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 579 (7th Cir. 1994) (quoting Nationwide Mutual Fire Insurance Co. v. Willenbrink, 924 F.2d 104, 105 (6th Cir. 1991)).  Finally, the court of appeals has cautioned that a suit for declaratory judgment should not be used as a tool "aimed solely as wresting the choice of forum from the 'natural plaintiff.'"  Hyatt International Corp. v. Coco, 302 F.3d 707, 718 (7th Cir. 2002).

Applying these principles to the facts of the present case, I conclude that this suit should be dismissed in favor of the Ohio proceedings.  Neither of the factual situations

contemplated by Tempco, 819 F.2d at 749, is present in this case.  Before plaintiffs NPWSI and the NPWSI plan initiated this lawsuit, the union and three retirees had already filed a lawsuit in Ohio, seeking relief under the LMRA and ERISA on the basis of the same amendments to the employee benefits plan at issue in this case.  Although they did not name plaintiffs NPWSI and the NPWSI plan as defendants in that case initially, they have sought leave to amend their complaint to do so.  As the court of appeals explained in Newell, the retirees and the union are the "natural plaintiffs" in this type of dispute.  Newell, 532 F.3d at 591.  Thus, plaintiffs' decision to file suit in this court appears to be "procedural fencing" or an attempt to "wrest" the choice of forum from the Union and retirees.  In addition, because plaintiffs' claim under ERISA has been dismissed from this suit, this declaratory judgment action would not resolve all of the disputes between the parties.  Again in Newell, the court of appeals stated that it is sensible to adjudicate claims in the court in which the ERISA and LMRA claims may go forward in the same litigation.  Id.

Unwilling to concede the point, plaintiffs contend there are several reasons why this case should proceed in Wisconsin:  the named defendants are citizens of Wisconsin; the mills at which they worked were located in Wisconsin; the communications regarding benefit changes to which defendants object were sent from NPWSI's offices in Wisconsin; and jurisdiction and venue are improper in Ohio.  However, I need not decide whether the district court in the Southern District of Ohio has personal jurisdiction over NPWSI and the

NPWSI plan and whether venue is proper there.  Plaintiffs should make their arguments in the Ohio court, which will determine jurisdiction and venue after the parties have completed briefing on the issue.  If the Ohio court determines that jurisdiction exists and that venue is proper, it may adjudicate the entire controversy in Ohio.  If the Ohio court determines that it does not have jurisdiction or that venue is improper, it may decide to transfer the case to this district or in the alternative, dismiss the case, allowing the union and retirees to refile the case here.  In any event, until the Ohio court makes such decision, the natural plaintiffs in this dispute may remain in their chosen forum.

ORDER

IT IS ORDERED that

1.   The motion to dismiss, dkt. #18, filed by defendants William Clendenning, Lawrence Bierstaker, Bernard Rouse, Gary Dollevoet and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial Workers International Union, AFL-CIO/CLC is GRANTED.  The claim for declaratory relief under the Employee Retirement Income Security Act, 29 U.S.C. § 1132, filed by plaintiffs NewPage Wisconsin System, Inc. and NPWSI Retiree Health Plan, f/k/a The Sena Retiree Health Plan (count II of the complaint), is DISMISSED for lack of subject matter jurisdiction.  The court declines to

exercise jurisdiction over plaintiffs' claim for declaratory relief under the Labor Management

Relations Act, 29 U.S.C. § 185 (count I of the complaint).  The action is DISMISSED.

2.  The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 16th day of July, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

24